In the Interest of N.M., J.M. and R.M., Minor Children,

State of Iowa, Appellant,

B.M., Mother, Appellee,

D.M., Father.

No. 91–1371.

Supreme Court of Iowa.

Sept. 23, 1992.

**154**

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., and Judy Sheirbon, Asst. Atty. Gen., for appellant.

Mary K. Hoefer of the Mears Law Office, Iowa City, for appellee.

James E. Claypool, Williamsburg, guardian ad litem for minor children.

Ronald L. Saylor, Williamsburg, for the father.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, NEUMAN, and ANDREASEN, JJ.

SCHULTZ, Justice.

The principal issue on this appeal is whether the parental rights of one parent can be terminated pursuant to Iowa Code section 232.116(1)(d)[1] when the child is in the custody of the other parent. Following trial, the juvenile referee refused to terminate the mother's parental rights to three of her children because they had been placed in the custody of their father. The court of appeals affirmed. As we disagree, we vacate the decision of the court of appeals and reverse the ruling of the juvenile court.

During their marriage, B.M., the mother, and D.M., the father, parented three children, N.M., J.M., and R.M. These children were all juveniles during these proceedings, as was an older half-brother, S.A., who has the same mother but a different biological father, J.A. The four children have lived together throughout their lives.

When the family lived together, it was plagued with numerous problems. Both parents were substance abusers. The father physically abused the mother. Both parents neglected the children's nutritional and other physical needs. The parents left the children unattended for long periods of time and failed to provide adequate supervision.

In January 1989, the four children were adjudicated children in need of assistance pursuant to Iowa Code section 232.-2(6)(c)(2), and custody was placed with the Department of Human Services (department). The children were placed in the home of their paternal grandparents where their father also resided. This placement continued following a disposition hearing and a review hearing.

In April 1991, the State filed the present action asking that the mother's parental rights be terminated to all four children and that J.A.'s rights to S.A. be terminated. In May 1991, prior to the hearing on the termination petition, the State made an application to modify the dispositional order to grant placement with D.M., now living separately from the paternal grandparents. The juvenile court granted the application for modification and placed custody of all four children with D.M. under the protective supervision of the department.[2]

Following the hearing on the termination of the mother's parental rights, the juvenile court terminated the mother's and J.A.'s parental rights to S.A. The court found clear and convincing evidence that the grounds of Iowa Code sections 232.-

---

1. All references in this opinion are to the 1991 Code of Iowa.

2. There is some uncertainty in the record as to whether the juvenile court initially placed the children in dual custody of the department and the grandparents and in whether the modification intended to substitute the father for the grandparents. In its order regarding termination, the court indicated custody had been placed with the grandparents and then modified to place custody of the children with the father. As this point has not been challenged on appeal, we shall assume that the juvenile court placed "custody of the child," as that term is used in section 232.116(1)(d)(2), with D.M.

116(1)(d) [3] and (e) [4] had been established with regard to both parents of this child. The court observed that S.A. considers D.M. to be his father and that he is extremely close to his half-brothers and sister. The court concluded the termination would allow D.M. to adopt and legally place S.A. in his household and prevent the mother from regaining custody of S.A. Neither J.A. nor the mother appeal from the termination of their parental rights to S.A.

■ As to N.M., J.M., and R.M., the biological children of the mother and father, D.M., the court concluded that it was without authority to terminate B.M.'s parental rights because the children were now in the father's custody. pursuant to the modified disposition order. The juvenile court interpreted the statutory language of section 232.116(1)(d) [5] "custody of the child has been transferred from the child's parents or placement pursuant to section 232.-102..." to require proof that custody had been transferred from both parents at the time of the hearing. The court reasoned that "parents" as used in the statute was plural.

We believe that this interpretation conflicts with a statutory rule of construction. Iowa Code section 4.1(3) provides the "singular includes the plural, and the plural includes the singular...." This rule is subject to the requirement that it be consistent with the manifest intent of the legislature and not be repugnant to the context of the statute subsection 4.1. *Grove v. City of Des Moines,* 280 N.W.2d 378, 384 (Iowa 1979).

The legislature made its intent clear by providing that chapter 232 "shall be liberally construed to the end that each child under the jurisdiction of the court shall receive, preferably in the child's own home, the care, guidance, and control that will best serve the child's welfare and the best interest of the State." Iowa Code § 232.1. The welfare and best interests of the children are paramount. *In re J.R.H.,* 358 N.W.2d 311, 317 (Iowa 1984). We shall construe the statute guided by this principle.

It is not in the children's best interests to interpret the language of the subsections to prevent termination of the noncustodial parent's rights when the children are placed in the separate home of the other parent. We conceive of situations when a child in the custody of one parent would benefit from the termination of the other parent's rights. The healing process of a child suffering from abuse by a noncustodial parent may in some cases be aided by the finality of the termination. That is not to say that we believe the required proof of the statutory grounds for relief should always result in a termination of the noncustodial parent's rights. "Termination is an outcome of last resort." *In re S.J.,* 451 N.W.2d 827, 832 (Iowa 1990).

The mother asserts that the State should not be allowed to intrude in a situation where the children are safe and well-cared for but the noncustodial parent's lifestyle is simply not compatible with raising chil-

---

**3.** Section 232.116(1)(d) provides the following grounds for termination:

(1) The child has been adjudicated a child in need of assistance pursuant to section 232.-96.

(2) The custody of the child has been transferred from the child's parents for placement pursuant to section 232.102 and the placement has lasted for a period of at least six consecutive months.

(3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so.

**4.** Section 232.116(1)(e) provides the following grounds for termination:

(1) The child is four years of age or older.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.-96.

(3) The custody of the child has been transferred from the child's parents for placement pursuant to section 232.102 for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

**5.** The court also interpreted identical language in sections 232.116(1)(e) and (g). Although our interpretation of this language would apply to all three subsections, in this opinion we only consider its application to subsection (d).

dren. The mother compares this situation with a divorce case where one parent gains legal custody of the children, but the other parent's rights are not terminated. She urges a construction of the statute which allows permanent custody to be given one parent with restrictions on the other parent. We cannot agree with this suggestion. These arguments ignore the State's required intrusion in the life of children adjudicated in need of assistance.

We afford a rebuttable presumption that the best interest of a child is served when custody is with the natural parents. *In re Chad*, 318 N.W.2d 213, 218 (Iowa 1982). In so doing, we recognize the fundamental liberty interest of the natural parents in the care and management of their children does not evaporate simply because they have not been model parents or have lost temporary custody of their children. *Id.* (citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599, 606 (1982). These principles are better utilized through the adjudicatory process of determining whether or not to terminate, rather than construing the statute in a manner that would prevent a termination in egregious situations.

In summary, we hold that section 232.-116(1)(d) allows the termination of parental rights of the noncustodial parent even though legal custody of the child is placed with the other parent. Consequently, we vacate the decision of the court of appeals and reverse the decision of the juvenile court.

■ This holding does not answer the question of whether or not the mother's parental rights to N.M., J.M., and R.M. should be terminated. As previously indicated, the juvenile court terminated the mother's parental rights to the oldest child, the half-brother of the three children involved in this appeal, and placed custody and guardianship of this child with D.M., the child's stepfather. D.M., the father of these children, has demonstrated a change of lifestyle that is now compatible with the role of a parent. The mother has not appealed from this decision.

As to the mother, the same facts that led to that termination decision are present here. The adjudication that the children were in need of assistance was supported by a lengthy history of child abuse reports based on lack of proper supervision, domestic violence, alcohol and drug abuse by the parents. The children were placed with the paternal grandparents and the mother was offered services for drug and alcohol abuse and parenting problems. She separated from her husband in 1988 and subsequently they were divorced. Following the separation, the mother continued to move frequently and entered into several relationships with men, some of whom were physically abusive to her.

Her visitation with the children has been very sporadic. Her last visit with the children was over six months prior to the termination hearing. At times she became physically violent with the children during visits and often yelled at them.

The visits had an obvious negative effect on the children. Following the visits, the children exhibited violent fighting, hitting and kicking that would continue for several days in their paternal grandparents' home. If the visits had been traumatic because the mother had sworn or struck one of them, the children were observed to have bed-wetting problems or nightmares. The children's psychological evaluations and the on-going documentation of their negative reactions following these sporadic visitations with the mother show these children, like their older half-brother, deserve to be able to look forward to a positive future with their father without further disruptions by the mother.

Under the circumstances, we believe that the State has established by clear and convincing evidence that the best interests of the children require a termination of the mother's parental rights and further find that all of the statutory requisites for termination have been met. We hold that the parental rights of B.M. to her children N.M., J.M. and R.M. should be terminated. We remand this case to the district court for the entry of such an order.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.