# IN THE COURT OF APPEALS OF IOWA

No. 17-0615
Filed June 21, 2017

**IN THE INTEREST OF E.H. and Z.H.,**
**Minor Children,**

**A.H., Mother,**
 Appellant.

_____

 Appeal from the Iowa District Court for Hancock County, Karen R. K. Salic, District Associate Judge.


 A mother appeals from an order terminating her parental rights pursuant to Iowa Code chapter 232 (2016). **AFFIRMED.**


 Michael J. Moeller of Sorensen & Moeller Law Office, Clear Lake, for appellant mother.

 Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer, Assistant Attorney General, for appellee State.

 Carrie J. Rodriguez of Garland & Rodriguez, Garner, guardian ad litem for minor children.


 Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**MCDONALD, Judge.**

Ashley appeals from an order terminating her parental rights in her children, E.H. and Z.H. The juvenile court terminated Ashley's parental rights pursuant to Iowa Code section 232.116(1)(b), (d), (e), (f), and (*l*) (2016). In her petition on appeal, Ashley contends the State failed to prove by clear and convincing evidence the statutory grounds authorizing the termination of her parental rights. She also contends the district court should have declined to terminate her parental rights pursuant to Code section 232.116(3).

I.

"We review proceedings terminating parental rights de novo." *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014) (citing *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)). The statutory framework is well established. Pursuant to Iowa Code section 232.116(1), the State must prove a statutory ground authorizing the termination of a parent's rights. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). Second, pursuant to section 232.116(2), the State must prove termination of parental rights is in the best interests of the children. *See id.* Third, if the State has proved both the existence of statutory harm and termination of a parent's rights is in the best interests of the children, the juvenile court must consider whether any countervailing considerations set forth in section 232.116(3) should nonetheless preclude termination of parental rights. *See id.* These countervailing considerations are permissive, not mandatory. *See A.M.*, 843 N.W.2d at 113.

II.

A.

Ashley challenges the sufficiency of the evidence supporting each statutory ground authorizing termination of her parental rights. Where, as here, the juvenile court terminates parental rights pursuant to more than one statutory ground, we may affirm the order so long as there is sufficient evidence to support termination of parental rights pursuant to any one ground. *See D.W.*, 791 N.W.2d at 707.

We address the sufficiency of the evidence supporting the termination of Ashley's parental rights pursuant to section 232.116(1)(f). Pursuant to this provision, the State is required to prove by clear and convincing evidence with regard to each child:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f). The first three elements are not in dispute. As to the fourth element, a child cannot be returned to the custody of the child's parents under section 232.102 if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication or would remain a child in need of assistance. *See In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992); *see also In re R.R.K.*, 544 N.W.2d 274, 277 (Iowa Ct. App. 1995). We have

interpreted this to require clear and convincing evidence the children would be exposed to an appreciable risk of adjudicatory harm if returned to the parent's custody at the time of the termination hearing. *See In re M.S.*, 889 N.W.2d 675, 680 (Iowa Ct. App. 2016).

The record establishes the following. Ashley and Matthew are the parents of E.H. and Z.H. The family came to the attention of the Iowa Department of Human Services (IDHS) in 2010. The parents tested positive for methamphetamine. They engaged in services, including substance-abuse testing and treatment. Matthew completed substance-abuse treatment and maintained his sobriety. Ashley did not. The parents separated and ultimately divorced in November 2015.

Ashely again came to the attention of IDHS in the summer of 2015. At that time, she tested positive for amphetamines and methamphetamine. IDHS extended services to Ashley, including substance-abuse testing, evaluations, and treatment. Ashley continued to deny using controlled substances although she continued to test positive for the use of methamphetamine. In addition to wanting Ashley to address her substance abuse, IDHS also wanted Ashley to address other concerns, including lack of employment, lack of housing, and untreated mental-health conditions. Ashley largely ignored IDHS's offer of services and failed to address the concerns raised.

The children were removed from Ashley's care and placed in Matthew's care in March 2016. The juvenile court granted concurrent jurisdiction over the proceeding. In October 2016, the district court entered a stipulated modification of the dissolution decree. The modification awarded Matthew and Ashley joint

legal custody of the children and physical care of the children to Matthew. Ashley was allowed visitation with the children on a graduated visitation schedule contingent upon her sobriety as evidenced by negative drug test results.

Over the life of this case, Ashley was unable to address the issues giving rise to removal. At the time of the termination, she was not employed, did not have housing, had not addressed her mental-health conditions, and had not addressed her substance-abuse issues. The last issue is the most concerning. Ashley has used methamphetamine for seventeen years. She repeatedly has sought treatment only to quit the treatment or relapse. During these proceedings, Ashley failed to complete three residential treatment programs and several non-residential treatment programs. She conceded at the termination hearing the children could not be returned to her care.

We conclude there was sufficient evidence supporting termination of Ashley's parental rights pursuant to section 232.116(1)(f). *See, e.g., In re K.G.*, No. 17-0347, 2017 WL 2189768, at *2 (Iowa Ct. App. May 17, 2017) (affirming termination where mother demonstrated long history of unresolved methamphetamine abuse); *In re J.A.*, No. 16-1512, 2016 WL 6396074, at *2 (Iowa Ct. App. Oct. 26, 2016) (affirming termination despite mother's request for additional time where mother "failed to address her substance-abuse issues over the course of several years" and "now faces an impending criminal indictment for methamphetamine distribution"); *In re R.P.*, No. 16-1154, 2016 WL 4544426, at *2 (Iowa Ct. App. Aug. 31, 2016) (affirming termination of parental rights despite father's request for more time where father had a history of substance abuse and there was "nothing to indicate he could resolve the problem and provide constant

and reliable care for the child outside a supervised setting"); *In re C.M.*, No. 14-1140, 2015 WL 408187, at *4–5 (Iowa Ct. App. Jan. 28, 2015) (affirming termination of parental rights where the parents sought more time but evidence established they were unlikely to resolve their substance abuse problems); *In re H.L.*, No. 14-0708, 2014 WL 3513262, at *4 (Iowa Ct. App. July 16, 2014) (affirming termination of parental rights where father had history of substance abuse); *In re J.L.*, No. 02-1968, 2003 WL 21544226, at *3 (Iowa Ct. App. July 10, 2003) (concluding relapse of parent despite offer of services supported termination of parental rights); *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("[I]n considering the impact of a drug addiction, we must consider the treatment history of the parent to gauge the likelihood the parent will be in a position to parent the child in the foreseeable future. Where the parent has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain sobriety, there is little hope of success in parenting." (citation omitted)).

B.

The State was also required to establish termination of Ashley's parental rights was in the best interests of the children. In deciding the issue, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). "We consider what the future holds for the child[ren] if returned to [their] parents." *In re R.M.*, 431 N.W.2d 196, 199 (Iowa Ct. App. 1988) (citing *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981)). As a general

rule, it is not in the best interests of children to return to a parent who refuses to address the department's primary concerns. *See In re H.R.K.*, 433 N.W.2d 46, 50 (Iowa Ct. App. 1988).

We conclude there is clear and convincing evidence the termination of Ashley's parental rights is in the best interests of the children. Ashley's arguments to the contrary focus on what is best for her. This is the problem. Ashley has chosen a lifestyle that precludes her from being able to provide for the needs of her children. Ashley cannot provide for the children's most basic needs because she is unemployed and lacks stable housing. She has not demonstrated an ability to nurture the children's educational and social needs. During these proceedings, Ashley failed to exercise visitation with the children on a regular basis, seeing them on fewer than ten occasions in the eight months preceding the termination hearing. Ashley's methamphetamine abuse poses active risks to the children. The children have suffered emotional distress in coping with the mother's addiction and her frequent absences from their lives. The mother's episodic appearances in the children's lives cause them grief and anxiety. Parenting is a full-time job that "cannot be turned off and on like a spigot. It must be constant, responsible, and reliable." *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990). Termination of the mother's rights is in the best interests of the children. *See, e.g., In re A.G.*, No. 07-1711, 2007 WL 3377931, at *3 (Iowa Ct. App. Nov. 15, 2007) (affirming termination order where father was unreliable and expressed only a recent interest in parenting).

C.

Ashley also contends there is no need to terminate her parental rights because the children's father has custody of the children. *See* Iowa Code § 232.116(3)(a). Relatedly, she argues there is no reason to terminate her parental rights because the stipulated decree would not allow her visitation unless she tested negative for using controlled substances.

The considerations set forth in section 232.116(3) are permissive and not mandatory. There is no reason to exercise the permissive exception under the facts and circumstances of this case. The mother has demonstrated over the course of almost two decades her inability to resolve the issues causing harm to her children. She has not addressed her lack of employment. She has not addressed her lack of shelter. She has not addressed her mental-health conditions. She has not addressed her substance-abuse problems. What is past is prologue. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) ("When making this decision, we look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future."); *N.F.*, 579 N.W.2d at 341; *In re R.D.*, No. 14-0252, 2014 WL 1714959, at *3 (Iowa Ct. App. Apr. 30, 2014) (affirming termination of parental rights where mother relapsed during proceedings).

Matthew can and does provide excellent care for the children. They are doing well in their current arrangement. Matthew, rightfully, has expressed concern regarding the potential for the mother to continue to cause harm to the children in the absence of a clean break. For the children's sake, termination is appropriate. *See In re N.M.,* 491 N.W.2d 153, 155 (Iowa 1992) ("We conceive of

situations when a child in the custody of one parent would benefit from the termination of the other parent's rights.").

III.

Although Ashley believes the children should wait for her to become a stable and nurturing parent, that is not the law. *See In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (quoting *P.L.*, 778 N.W.2d at 41)). "[A]t some point, the rights and needs of the children rise above the rights and needs of the parent." *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009) (citing *In re J.L.W.*, 570 N.W.2d 778, 781 (Iowa Ct. App. 1997)). We have reached that point. For the foregoing reasons, we affirm the order terminating Ashley's parental rights.

**AFFIRMED.**